UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TOWN OF OGDEN DUNES, ) | |
| PORTER COUNTY, INDIANA, ) | |
| OGDEN DUNES HOME ASSOCIATION, INC., ) | |
| STEVEN COOMBS, SUSAN COOMBS, ) | |
| PETER BROWN, EMILY VOGT, JAMES SKISH, ) | |
| ZORA GROS, KRISTINA GROS, ) | |
| EDWARD MCGUNN, LORI MCGUNN, ) | |
| LOU GAGLIARDI, PATRICIA GAGLIARDI, ) | |
| RICHARD FERRO, GARY BABCOKE, ) | |
| PATTY BABCOKE, CHAD HASSINGER, ) | |
| DAVID TARPO, CHERYL TARPO, ) | |
| ANGELINE KOMENICH, TIM CLELAND, ) | |
| PAULETTE DITTRICH, EDWIN ROOKS, ) | |
| LOU ANN ROOKS, CYNTHIA MANOS, ) | |
| DONNA FINCH, JOHN MEYER, ) | |
| PETER MAVRELIS, ELIZ MAVRELIS, ) | |
| NANCY WALLS ARVAY, GEORGE TEELING, ) | |
| MARGE TEELING, BRUCE BOYER, ) | |
| PETER TININO, GWEN TININO, ) | |
| RODGER HOWELL, JAMES D. COMBS, ) | |
| VICTORIA L. COMBS, ALLAN HALLINE, ) | |
| PATTI PERRY, PAUL ARNOLD, ) | |
| JOANN ARNOLD, JOHN BAILEY, ) | |
| ERIC JENSEN, BETHANY JENSEN, ) | |
| HIMANSHU DOSHI, JOHN LAWICKI, ) | |
| MIKE MYKLEBY, DARLENE MYKLEBY ) | |
| NOEL FRIGO, MARIANN FRIGO, AND ) | |
| DOUGLAS GOLAN, ) | |
| ) | |
| Plaintiffs ) | |
| v. ) | CAUSE NO.: |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| DEPARTMENT OF INTERIOR, ) | |
| DAVID BERNHART, IN HIS ) | |
| OFFICIAL CAPACITY AS ) | |
| SECRETARY OF THE ) | |
| DEPARTMENT OF INTERIOR, ) | |
| NATIONAL PARK SERVICE, ) | |
| DAVID VELA, IN HIS OFFICIAL ) | |
| CAPACITY AS ACTING ) | |

| | |
|---|---|
| DIRECTOR OF THE | ) |
| NATIONAL PARK SERVICE, | ) |
| PAUL LABOVITZ, PARK | ) |
| SUPERINTENDANT, INDIANA | ) |
| DUNES NATIONAL PARK | ) |
| IN HIS OFFICIAL CAPACITY, | ) |
| UNITED STATES ARMY CORP. | ) |
| OF ENGINEERS, LIEUTENANT | ) |
| GENERAL TODD T. SEMONITE, | ) |
| COMMANDING GENERAL OF | ) |
| THE U.S. ARMY CORPS OF | ) |
| ENGINEERS, IN HIS OFFICIAL | ) |
| CAPACITY, | ) |
| Defendants. | ) |

# COMPLAINT

Comes now Plaintiffs for their cause of action and state as follows:

1. The Town of Ogden Dunes ("Ogden Dunes" or the "Town"), Ogden Dunes Home Association, Inc., Steven Coombs, Susan Coombs, Peter Brown, Emily Vogt, James Skish, Zora Gros, Kristina Gros, Edward McGunn, Lori McGunn, Lou Gagliardi, Patricia Gagliardi, Richard Ferro, Gary Babcoke, Patty Babcoke, Chad Hassinger, David Tarpo, Cheryl Tarpo, Angeline Komenich, Tim Cleland, Paulette Dittrich, Edwin Rooks, Lou Ann Rooks, Cynthia Manos, Donna Finch, John Meyer, Peter Mavrelis, Eliz Mavrelis, Nancy Walls Arvay, George Teeling, Marge Teeling, Bruce Boyer, Peter Tinino, Gwen Tinino, Rodger Howell, James D. Combs, Victoria L. Combs, Allan Halline, Patti Perry, Paul Arnold, Joann Arnold, John Bailey, Eric Jensen, and Bethany Jensen, Himanshu Doshi, John Lawicki, Mike Mykleby, Darlene Mykleby, Noel Frigo, Mariann Frigo and Douglas Golan ("Individual Plaintiffs"), seek a declaratory judgment to prevent imminent harm to their shoreline along Lake Michigan. The Ogden Dunes shoreline has completely eroded to the extent that the steel wall and stone protection installed in the 1980s and 1990s to protect the shoreline is now totally exposed to Lake Michigan. The

primary cause of the erosion is due to the presence of several man-made structures extending into Lake Michigan that have disrupted the natural flow of sand and sediment that previously replenished the Ogden Dunes shoreline. The four structures are the Burns Waterway Harbor, the Arcelor Mittal Harbor, the U.S. Steel Harbor and the Burns Small Boat Harbor (hereinafter referred to as "Structures").

2. The erosion caused by these man-made structures has been exacerbated by the high Lake Michigan water level. As a result, the Town's shoreline protection system is at imminent risk of failure and at least one section of the steel wall has already experienced a failure. If any portion of the sheet piling and stone protection fails, the Town's infrastructure including, town-owned dunes, beach access ways, roads and utilities – and 60-plus private homes – are in danger of total destruction. The conditions and risks are so dire that Ogden Dunes declared a state of emergency with respect to its shoreline.

3. To prevent the failure of its shoreline protection system, Ogden Dunes repeatedly has sought to place additional reinforcement along the Town's shoreline to protect the steel wall sheet piling and to prevent further erosion. The State of Indiana approved the Town's plans to protect its shoreline. But the National Park Service ("NPS") has repeatedly interfered with the Town's efforts to protect its shoreline, even though it has no authority to issue or deny permits for work performed on Town property (which extends at least to the natural ordinary high-water mark) or State property (which is below the ordinary high-water mark). The U.S. Army Corps of Engineers ("USACE") also has interfered with the Town's efforts to protect its shoreline by conditioning approval of the project on concomitant approval by the NPS.

4. Plaintiffs seek a declaratory judgment that neither the NPS nor the USACE has authority to prevent Ogden Dunes from placing additional reinforcement along the Town's

shoreline. In the alternative, Plaintiffs seek a declaration that the NPS and the USACE have failed to comply with the Administrative Procedures Act and the Indiana Lake Michigan Program Document under the Coastal Zone Management Act in part by (i) failing to grant or deny the issuance of a permit for the project, (ii) imposing conditions beyond their statutory authority, (iii) unreasonably extending the process for the issuance of a permit, (iv) imposing indefinite, arbitrary, and capricious conditions, and (v) failing to allow Plaintiff to remedy the effects of unnatural erosion.

## Jurisdiction and Venue

5. Plaintiffs request a declaration of the parties' rights in accordance with the Declaratory Judgment Act. 28 U.S.C. §2201; *see also* Fed. R. Civ. P. 57. This action is brought pursuant to the Administrative Procedures Act ("APA"). 5 U.S.C. §551-559, 701-706. Plaintiff also seeks judicial review of federal agency actions in accordance with 5 U.S.C. §702. Plaintiff additionally seeks injunctive relief in accordance with Federal Rule of Civil Procedure 65. Plaintiff also seeks relief under the Mandamus Act, 28 U.S.C. 1651. Plaintiffs seek to Quiet Title under 28 U.S.C. §2409(a) to certain land claimed by the NPS. Finally, Plaintiff seeks recovery of costs and expenses, including reasonable attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412(d).

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1361 (mandamus of federal officer), the Declaratory Judgment Act, 28 U.S.C. §2201, and 28. U.S.C. §1346(f).

7. Venue is properly vested in this Court under 28 U.S.C. §1391(e) because the Defendants, NPS and USACE are present in this district, the Indiana Dunes National Park ("IDNP") is located in this district, Ogden Dunes is a municipal corporation located in this

district, and a substantial part of the acts and omissions giving rise to this cause of action occurred in this district. The individually named Plaintiffs are residents of Ogden Dunes whose real estate lies in close proximity to the Lake Michigan shoreline.

8. The United States has waived sovereign immunity with respect to the claims raised herein.

### Parties and Standing

9. The Plaintiff, Ogden Dunes, is a municipal corporation located in Porter County, Indiana. Ogden Dunes is located on the northern edge of Porter County, Indiana adjacent to Lake Michigan, one of the Great Lakes. Ogden Dunes owns certain real estate including certain property along the shoreline of Lake Michigan. Individual Plaintiffs are freeholders or parties with a possessory interest in real estate on Lake Shore Drive, Ogden Dunes, Porter County, Indiana, which lies adjacent to the real estate owned by Ogden Dunes, and is in imminent danger from the encroaching Lake Michigan.

10. The Defendant, Department of Interior ("DOI"), is a department of the United States of America charged with overseeing federal laws relating to National Parks among other things.

11. The Defendant, NPS, is an agency under the DOI responsible for administering in part, the laws, rules, and regulations relating to the IDNP.

12. The Defendant, David Bernhart, is the Secretary of the Department of Interior responsible for overseeing the agencies under the DOI, including NPS.

13. The Defendant, David Vela, is the acting Director of the NPS.

14. The Defendant, Paul Labovitz, is the Superintendent of IDNP.

5

15. The Defendant, USACE, is a federal agency under the Department of Defense charged in part with administering engineering and environmental services and water subject to federal jurisdiction.

16. The Defendant, Lieutenant General Todd T. Semonite, is the 54th Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers.

## Statutory Framework, Obligations and Violations

17. The INDP was created in 1966 as the Indiana Dunes National Lakeshore and became a National Park in 2019, the boundaries of which are located partially in Porter County, Indiana and initially delineated for acquisition on a map identified as "Boundary Map, Indiana Dunes National Lakeshore." ("Boundary Acquisition Map") 16 U.S.C. §460(u).  A portion of the area within the boundaries have never been acquired by NPS.

18. The authority and scope of NPS is defined in large part by 36 C.F.R. 1.2.

19. The Code of Federal Regulations provide that prior to the construction of any "structure . . . upon[,] across, over, through or under any park areas, except in accordance with the provisions of a valid permit . . . is prohibited."  36 C.F.R. 5.7.  None of the work proposed by Ogden Dunes is upon, across, over, through or under any park area.

20. The USACE and NPS are governed in part by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4331. Defendants violated NEPA by, among other things, requiring an Environmental Impact Statement ("EIS") and requiring Plaintiffs to fund the cost of an EIS.

21. USACE and NPS failed to comply with 33 U.S.C. §426e (providing for shore protection projects, and beach restoration, enhancement and nourishment), 16 U.S.C. §1451 (providing for the protection of coastal zones), and various other statues, regulations, executive orders, rules, and policies.

22. USACE and NPS failed to comply with Executive Order 11988: Floodplain Management, which states: "Each agency shall provide leadership and shall take action to reduce the risk of flood loss, to minimize the impact of floods on human safety, health and welfare, and to restore and preserve the natural and beneficial values served by floodplains in carrying out its responsibilities." The portion of Ogden Dunes subject to this action is in a declared floodplain as designated by the Federal Emergency Management Agency ("FEMA").

23. USACE and NPS failed to comply with 16 U.S.C. §1451, the Coastal Zone Management Act ("CZMA") which mandates compliance with the Lake Michigan Coastal Management Plan and Final Environmental Impact Statement ("LMCP") by failing to issue permits as requested. The LMCP provides that Ogden Dunes is an area where erosion rates have been increased by man-made structures and as such, is exempt from the 'let nature take its course' philosophy and further that owners of residential, commercial, or industrial properties that suffer erosion damage due to storm events or changes in lake level can obtain a permit under the Navigable Waters Act to restore their properties along or below the ordinary high watermark.

24. Defendants are in violation of 16 U.S.C. §460u-11(b) by rendering more restrictive federal, state, or local standards to the uses of property outside of park boundaries.

25. Defendants are in violation of the APA (5 U.S.C. §501 *et seq.*) by exercising authority over, and/or in unreasonably delaying approval of Plaintiff's, shore protection plans and work upon property which lies beyond the boundaries of NPS and the authority of NPS and/or USACE.

26. NPS has interfered with or obstructed the Town's efforts to obtain approvals for its shore protection plans and work from the Indiana Department of Natural Resources (IDNR) and the Indiana Department of Environmental Management (IDEM) and USACE.

27. The proposed shore protection work is to take place on land owned by Ogden Dunes and/or the State of Indiana.

## Factual and Procedural Background

28. Ogden Dunes owns approximately 4,630 feet of lake frontage. Ogden Dunes is protected by a shore protection system (sheet pile, stone toe, and revetment), with riparian rights, that protects the Town infrastructure including, Town-owned dunes, beach access ways, roads and utilities and private homes.

29. NPS has no right, title or interest in the land below the OHWM lakeward of the land owned by Ogden Dunes.

30. Prior to the construction of the Burns Waterway Harbor and the Arcelor Mittal Bulkhead, the littoral drift of sand and sediment was westerly, replenishing the shores along Ogden Dunes. Approximately 194,000 cubic yards of sand were transported in this fashion annually. It was well known by the Defendants that the Structures would cause unnatural erosion of the beach at Ogden Dunes. Studies by USACE and NPS predicted and verified unnatural accretion to the east of the Port and unnatural erosion to the west of the Port along the Ogden Dunes shoreline.

31. In approximately 1961, Midwest Steel (now U.S. Steel) received a permit to build a bulkhead 2,400 feet into Lake Michigan but only a portion was completed at the Burns Waterway as of 1967.

32. In 1966, Bethlehem Steel (now Arcelor Mittal) received a permit to build a bulkhead enclosing 300 acres of Lake Michigan which was started in 1966 and completed in 1968. This structure extends 2000 feet into Lake Michigan and lies east of Ogden Dunes.

33. The Burns Waterway Harbor was started in 1967 and completed in 1970 and it also lies east of Ogden Dunes. The Burns Small Boat Harbor was started in 1984 and completed in 1987. It also lies east of Ogden Dunes.

34. Within 10 years of completion of the Structures, sand had accreted to the east and eroded to the west of the Structures. For instance, the depth of Lake Michigan near the cold-water intake at Bailey Generating Station in Michigan City had decreased from 21 feet to 15 feet.

35. Due to sand starvation caused by the Structures, the USACE shoreline analysis of the area indicated that for the period 1967 through 1981 the shore just westward of Burns Ditch had eroded 300 feet.

36. There was extensive dune and beach lakeward of the Individual Plaintiffs' property a decade ago. Since that time, the dune and beach has eroded to the extent that it has been entirely eviscerated and the only protection left from the invading waters is the metal wall sheet piling located on Ogden Dunes property. If the metal wall fails, the Individual Plaintiffs' yards will disintegrate and their homes will collapse into Lake Michigan. In the event Ogden Dunes is granted permission to take prophylactic measures, then the risk of loss will be immensely reduced or eliminated.

## **The Historical Installation of Beach Protection**

37. In 1984, the USACE entered a consent decree to secure funding for beach nourishment mitigation, related to the Burns Small Boat Harbor, when the sand previously placed by the USACE had eroded.

38. The U.S. Army Corps of Engineers, Great Lakes Region, National Shoreline Management Study, dated February 2017 confirmed what numerous previous studies have found

dating back to the 1960s which is "the Burns Waterway Harbor in Portage have disrupted sediment littoral flow from Michigan shorelines to … the Ogden Dunes Beach."

39. In 1984-1986, Ogden Dunes consulted with the USACE and IDNR to develop a Shore Protection Policy which included designs for sheet piling, stone toe and revetment, which was approved on February 2, 1987. The shore protection system was installed above the natural area where the presence and action of water was so common, as to mark upon the soil of the bed a character distinct from the banks in respect to vegetation and the nature of the soil. This area is commonly known as the ordinary high-water mark ("OHWM").

40. From 1984-1986, sheet piling was placed 19 to 25 feet north of private property on Town property along the shoreline in the dunes. This covered approximated 2,415 of the 4,700 linear feet of Ogden Dunes that borders Lake Michigan. Stone toe projection was placed on approximately 440 linear feet of the installed sheet piling. Sheet pilings are vertical plates of metal which interlock and are inserted into the ground (sand and clay) to retain and act as a buffer or barrier from intruding water. The sheet piling installed measured roughly 14-25 feet in length from top to bottom. Stone toe protection is a recommended USACE best practice to reduce scourer and undermining at the base of the sheet pile, to reduce wave energy and to act as an accretive structure for sand.

41. From 1994-1998, additional sheet piling was placed 19 to 25 feet north of private property on town property along the shoreline and above the OHWM in the dunes of Ogden Dunes. This covered approximated 1,405 of the 4,700 linear feet of Ogden Dunes that borders Lake Michigan. Stone toe projection was placed on approximately 1175 linear feet of the installed sheet piling. In 1998 stone revetment was placed 25 feet north of private property on town property along the shoreline in the dunes of Ogden Dunes. This covered approximated 715

of the 4,700 linear feet of Ogden Dunes that bordered Lake Michigan. Approximately, 50% of the current shore protection system has either stone revetment or stone toe protection.

42. To address the sand starvation to Ogden Dunes' shoreline caused by the Structures, in 1997, the USACE issued a permit to the State of Indiana to install a steel wall of sheet piling north of 2 through 16 Shore Drive, below the OHWM. The NPS joined in support of the restoration of this failed system and requested the use of stone toe protection.

### The Erosion of Beach Along Ogden Dunes

43. Currently the majority of the shoreline of Ogden Dunes along Lake Michigan has completely eroded to the extent that the sheet piling or stone protection is totally and unnaturally exposed to the waters of Lake Michigan.

44. In 2000, according to a consent decree, USACE placed 143,000 cubic yards of sand on the Portage Lakefront Beach in the Indiana Dunes National Park. This mobilized into the littoral flow and provided an ample beach north of Ogden Dunes for many years. However, USACE failed to comply with the consent decree thereafter causing the Ogden Dunes beach to suffer from sand starvation once again. By 2009, the east end of Ogden Dunes was exposed.

45. At least one section of sheet piling has experienced a partial and continuing failure and is in imminent danger of complete failure.

46. If any portion of the sheet piling fails, the town infrastructure including, town-owned dunes, beach access ways, roads and utilities – and private homes – are in danger of total destruction. This in turn could lead to the release of sewage and other pollutants into Lake Michigan endangering the public and wildlife, and will endanger the lives of the occupants of those residences.

47. Ogden Dunes has for a number of years sought permits or approvals to perform certain preventative maintenance so that the steel wall of sheet piling would not be imperiled by the encroaching lake.  IDNR and IDEM have issued the State required permits.

48. Ogden Dunes first submitted an application for this work to USACE on October 1, 2009. At the time, the majority of the steel wall was covered by a sand dune.

49. The February 8, 2010 USACE public notice for the permit application stated that an Environmental Impact Statement ("EIS") was not needed and that the USACE had determined the activity would not affect any federally endangered or threatened species and was not likely to adversely affect any historic property.

50. Since 2009, NPS has written IDNR, IDEM and USACE multiple times to prevent the Town from obtaining permits and approvals to do the necessary work to protect the steel wall and shoreline.

51. In December 17, 2014, the Town again sought approvals from the IDNR, IDEM, USACE and NPS to place stone toe protection along Lots four (4) through one hundred fifty-six (156) Shore Drive in Ogden Dunes.  Stone toe protection is the placement of large stones along the footing of the steel sheet piling to reinforce the piling and to act as a further deterrent against additional erosion.  IDNR and IDEM again granted the State required permits.[1]

52. In letter dated January 9, 2016, from NPS to USACE, NPS objected to the proposed permit.

53. On May 11, 2016 the USACE stated it would not issue a permit based on NPS's objections.

---

[1] In addition, the IDNR, Division of Historic Preservation & Archaeology concluded that the proposed activity would not adversely affect any historic property or cultural resources.  And the U.S. Department of Interior, Fish and Wildlife Services, concluded that the proposed activity would not affect any federally listed endangered or threatened species and that no further consultation is needed.

54. On June 15, 2017 the USACE emailed Ogden Dunes stating that the NPS will only approve beach nourishment and not hard armoring techniques as proposed in the permit request.

55. On June 10, 2019 Ogden Dunes submitted yet another request to the NPS seeking approval for the placement of stone toe protection for the Town shoreline.

56. The NPS, through Labovitz, has neither granted nor denied Ogden Dunes' application, but has rendered indeterminate conditions and stipulations beyond its jurisdiction and authority, including requiring an EIS at Ogden Dunes' expense.

57. The status of the USACE and NPS permit requests are still open. NPS has neither granted nor denied the permit application.[2] And the USACE has refused to approve the proposed work unless and until NPS signs off.

58. The area sought to be repaired and maintained is not on nor will it affect NPS property, as NPS has never acquired the portion designated within its boundary delineation, which lies northerly of the Plaintiffs property, either by purchase or donation.

**NPS and USACE Have Allowed the Placement of Stone Protection at the National Park Beach Adjacent to Ogden Dunes and at the Nearby Federal Breakwater**

59. Despite objecting to the placement of stone to protect the shoreline of Ogden Dunes, in December of 2017, NPS allowed the placement of stone protection at the IDNP Portage Lakefront on the dunes and onto the beach adjacent to the Pavilion.

---

[2] NPS recently indicated that it may (subject to certain unspecified conditions and a NEPA review) allow the Town to install unspecified temporary protection that must be removed at some indeterminate time (and therefore must be capable of being removed). Temporary, removable measures are no protection at all and, unlike stone toe protection, will not prevent a failure of the steel wall protection system.

60. Similarly, in 2019, the USACE started a two-year project to maintain the federal breakwater at Burns Harbor by placing additional stone on the existing structure. An EIS was not required.

61. NPS and USACE know that their failure to approve the proposed work presents an imminent danger to the Town and the Individual Plaintiffs. In 2015, the Town commissioned a study of the shore protection system that found the shore protection system has little to no safety margin in portions of the system. There has been further erosion since this study was completed.

62. The conditions and risks are so dire that Ogden Dunes had declared a state of emergency with respect to its shoreline, and recently re-declared a continuing state of emergency with respect to its shoreline.

63. Both NPS and USACE agree that the Ogden Dunes shore protection system will fail if nothing is done.

64. By preventing Ogden Dunes from taking the necessary steps to protect its shoreline, NPS and USACE have (i) acted beyond the scope of their authority and/or imposed conditions beyond their statutory authority, (ii) unreasonably delayed approval of the Town's plans to protect its shoreline, and (iii) imposed indefinite, arbitrary, and capricious conditions on the Town's plans and efforts to protect its shoreline.

65. Absent a declaration allowing Ogden Dunes to proceed with its plan to place stone toe protection to secure the wall of steel sheet piling protecting the shoreline, the wall will fail, and Plaintiffs will suffer permanent, irreparable harm.

## Causes of Action

### Count I – Declaratory Judgment

Come now Plaintiffs, by counsel, and reincorporate rhetorical Paragraphs 1-65.

66. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57.

67. There is a genuine and bona fide dispute and an actual case and controversy regarding whether NPS and/or USACE has authority to issue or deny permits for work to be performed by Ogden Dunes above the natural OHWM after artificially created unnatural erosion to the beaches and sand dunes located within Ogden Dunes.

68. There is a genuine and bona fide dispute and an actual case and controversy regarding whether NPS and/or USACE has authority to deny permits for work to be performed by Ogden Dunes below the natural OHWM since Ogden Dunes is allowed to do this work according to the LMCP.

69. Pursuant to the Declaratory Judgment Act, Plaintiffs request the Court declare the following:

   A. NPS and USACE have no authority over the emergency and/or permanent maintenance and repair proposed by Plaintiffs as the same lies beyond the natural OHWM and thus beyond the Defendants jurisdiction.

   B. NPS and/or USACE, in the event they have authority over Plaintiffs' proposed emergency and/or permanent maintenance and repair, have failed to comply with the APA by:

   (i) By failing to grant or deny the issuance of a permit to Plaintiff, Ogden Dunes.

15

    (ii)  Imposing obligations beyond their statutory authority.

    (iii)  Unreasonably extending the process for the issuance of a permit.

    (iv)  Imposing indefinite, arbitrary, and capricious obligations upon Plaintiff, Ogden Dunes, prior to the issuance of a permit.

    (v)  Granting conditional relief, but then requiring complete remediation of that relief, all of which is beyond their statutory authority.

  C.  The existing high-water mark is the result of artificially created conditions, created by parties other than Plaintiffs.

  D.  NPS has no right, title, or interest in certain real estate that was not acquired by it through purchase or donation, and importantly, any land below the OHWM lakeward of the land owned by Ogden Dunes.

  E.  The work contemplated by Plaintiffs is categorically excluded from an EIS or Environment Assessment under NEPA.

  F.  The Defendants are in violation and have failed to comply with 33 U.S.C. §426(e), 16 U.S.C. §1451, 16 U.S.C. §460(u)-11, and various other statutes, regulations, and orders.

WHEREFORE, Plaintiffs request that the Court grant the declaratory relief set forth above and for all other just and proper relief in the premises.

## Count II – Administrative Procedures Act

Come now Plaintiffs, by counsel, and reincorporate rhetorical Paragraphs 1-65.

70.  NPS and USACE are in violation of the APA by acting contrary to their obligations under the United States Code, the Code of Federal Regulations, and the Director's Orders of the National Park Service.

71. NPS and USACE are in violation of the APA by unlawfully withholding and unreasonably delaying agency action.

72. NPS and USACE are in violation of the APA by acting in excess of their statutory authority and limitations.

73. NPS and USACE are in violation of the APA by acting contrary to the rights of Plaintiffs under the Fifth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs request the Court to determine that the Defendants have violated the APA, issue orders consistent with the relief requested, and for all other just and proper relief in the premises.

### Count III – Mandamus

Come now Plaintiffs, by counsel, and reincorporate rhetorical Paragraphs 1-65.

74. Plaintiffs seek a Writ of Mandamus pursuant to 28 U.S.C. §1651 compelling the Defendants to:

   A. Issue a grant or denial of the Application for Permit by Ogden Dunes, definitive in nature, without contingency, and in compliance with applicable law.

   B. Perform their statutory duties within a time certain as determined and ordered by this Court.

WHEREFORE, Plaintiffs request an Order mandating that the Defendants comply with their statutorily imposed duties, issue orders consistent with the relief requested, and for all other just and proper relief in the premises.

17

## Count IV – Temporary Restraining Order, Preliminary Injunction And Permanent Injunction

Come now Plaintiffs, by counsel, and reincorporate rhetorical Paragraphs 1-65.

75. Plaintiffs seek preliminary and injunctive relief prohibiting NPS and USACE from exercising authority over and otherwise interfering with the emergency and/or permanent maintenance and repair of sheet piling along the shores of Ogden Dunes which lies lakeward of the natural OHWM and the jurisdiction of the Defendants.

76. Plaintiffs seek an order requiring the USACE to perform its statutory duties in funding and renourishing the sand along and adjacent to the Ogden Dunes shoreline.

WHEREFORE, Plaintiffs request an Order enjoining the Defendants from exercising jurisdiction beyond their statutory authority, from prohibiting Plaintiffs from taking preventative measures above and below the natural OHWM, and for all other just and proper relief in the premises.

## Count V – Quiet Title

Come now Plaintiffs, by counsel, and reincorporate rhetorical Paragraphs 1-65.

77. Plaintiffs seek to quiet title to that portion of the land/area delineated within the Boundary Acquisition Map which lies northerly of the Plaintiffs property and westerly of the easternmost boundary of Ogden Dunes.

78. The Defendants have no right, title or interest in the aforedescribed land as it can only be acquired by donation or purchase, neither of which has occurred.

WHEREFORE, Plaintiffs request that title be quieted as alleged, the Court determine that neither the NPS nor any other Defendant has any right, title, or interest in the area specified, and for all other just and proper relief in the premises.

## Count VI – Attorney Fees

Come now Plaintiffs, by counsel, and reincorporate rhetorical Paragraphs 1-65.

79. Plaintiffs request attorney fees on all applicable counts in accordance with the Equal Access to Justice Act.

WHEREFORE, Plaintiffs request an award of attorney fees and for all other just and proper relief in the premises.

> Respectfully submitted,
>
> WOODWARD LAW OFFICES, LLP
>
> By: /s/ R. Brian Woodward
> R. Brian Woodward, #2303-45
>
> By: /s/ David E. Woodward
> David E. Woodward, #15299-45
> Woodward Law Offices, LLP
> 200 E. 90th Drive
> Merrillville, Indiana 46410
> Phone: (219) 736-9990
> Email: rbwoodward@wbbklaw.com
> dwoodward@wbbklaw.com

## CERTIFICATE OF SERVICE

I certify that on January 24, 2020, a true and complete copy of the above and foregoing pleading or paper was made upon each of the parties and/or attorneys of record herein by CM/ECF.

> /s/ R. Brian Woodward
> R. Brian Woodward, #2303-45

N:\cberwanger\Litigation\Ogden Dunes\COMPLAINT FINAL.docx